1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  CHINHAYI COLEMAN CADET (CABN 194542)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7205
7       FAX: (415) 436-7234
        Chinhayi.cadet@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

13 UNITED STATES OF AMERICA,            )  No.  CR 14-00639 EMC
                                        )
14        Plaintiff,                    )  UNITED STATES' SENTENCING
                                        )  MEMORANDUM
15    v.                                )
                                        )  Sentencing Date:  June 28, 2017
16 SCOTT STEEVER,                       )  Time: 2:30 p.m.
                                        )  Judge:  Honorable Edward M. Chen
17        Defendant.                    )
                                        )
18 _____  )

19

20

21

22

23

24

25

26

27

28

1  I.    **INTRODUCTION**

2      **A.    Indictment**

3          On December 18, 2014, a nine count Indictment was filed in the Northern District of California,

4  charging Scott Steever, along with co-defendant Robert Anderson, with conspiracy to commit wire

5  fraud, conspiracy to commit money laundering, wire fraud, and money laundering.  Count One charges a

6  violation of 18 U.S.C. §1349 – i.e., conspiracy to commit wire fraud.  Count Two charges a violation of

7  18 U.S.C. §1956(h) – i.e., conspiracy to commit money laundering.  Counts Three through Eight charge

8  violations of 18 U.S.C. §1343 – i.e., wire fraud.  Count Nine charges a violation of 18 U.S.C. §§ 1957

9  and 2 – i.e., money laundering.  The defendant is also charged in the forfeiture allegation.

10      **B.    Guilty Plea**

11          On November 18, 2016, Steever pled guilty to Counts One and Two of the Indictment charging

12  him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit

13  money laundering, in violation of 18 U.S.C. § 1956(h).  In pleading guilty, Steever admitted the

14  following:

15          a.    During the period of his offenses, he was a licensed attorney, admitted to the State Bar of

16  California in 1995.  He was law firm partners with co-defendant Robert Anderson at the Santa Rosa,

17  California, law firm of Lanahan & Reilly LLP, which by 2010 became known as Lanahan Steever &

18  Anderson LLP (collectively, "LSA").

19          b.    By 2008, Steever assumed the duties of LSA's managing partner and continued to serve

20  in that capacity through approximately March 2012.  Due to his health and other issues, including work-

21  related travel, he intermittently had Anderson tend to Steever's duties as LSA's managing partner on an

22  interim or acting capacity.

23          c.    By 2009, LSA was financially distressed and experienced persistent cash flow problems.

24  That year, a long-time client of the firm, E.M., passed away and his widow, B.M, retained LSA to settle

25  her husband's affairs, including statement of debts.

26          d.    By November 2009, and continuing through at least August 2012, Steever agreed with

27  Anderson to engage in and devise a scheme and artifice to defraud victim B.M.  Specifically, Steever

28  and Anderson took funds held for her benefiting an LSA client trust account, used those funds to pay

1  LSA expenses that were not related to B.M.'s representation, including payment of Steever's and

2  Anderson's partnership draws, and later misrepresented that those funds were still held in a trust account

3  for her benefit, even though the funds had been spent.

4       e.     Victim B.M. entrusted LSA with a check dated August 18, 2009, for $318,903.94 (the

5  "Check"), which were life insurance proceeds from a policy that covered E.M.  Remaining funds were

6  to be returned to B.M.  Around November 13, 2009, LSA deposited the Check into its client trust

7  account at North Coast Bank in Santa Rosa, California, a division of American River Bank, including a

8  client trust account.

9       f.     Shortly after the Check was deposited, Anderson and Steever (and sometimes LSA

10  employees acting at Steever's and Anderson's direction) began spending B.M.'s funds without

11  authorization by (i) transferring funds out of the client account; (ii) writing checks from the client trust

12  account to third parties unrelated to the representation of B.M.; and (iii) writing checks from the client

13  trust account to other LSA bank accounts and spending the funds on expenses unrelated to the

14  representation of B.M.

15       g.     To further Steever's and Anderson's scheme to defraud, Steever and Anderson caused the

16  following checks to be issued from the LSA client trust account, thereby causing transmissions of wire

17  communications in interstate commerce:

18       i.     On approximately December 23, 2009, Steever signed check #3538 for $5,664.55,

19  which was deposited into a North Coast account ending in -6115;

20       ii.     On approximately December 28, 2009, Anderson signed check #3539 for $7,500,

21  which was deposited into a North Coast account ending in -6115;

22       iii.     On approximately January 4, 2010, Steever and Anderson signed check #3532 for

23  $17,500, which was deposited into a North Coast account ending in -6412;

24       iv.     On approximately January 7, 2010, Anderson signed check #3544 for $20,170,

25  which was deposited into a North Coast account ending in -6115; and

26       v.     On approximately January 26, 2010, Anderson signed check #3548 for

27  $59,323.33, payable to "North Coast Bank," which resulted in issuance of a cashier's check for the same

28  amount being issued by North Coast Bank, and deposit of that cashier's check into an LSA client trust

account at Presidio Bank.

h.      In addition, contemporaneous with Steever's and Anderson's agreement to defraud B.M., Steever and Anderson agreed to conduct transactions, through North Coast Bank and other financial institutions, involving funds obtained from our scheme to defraud B.M., including a check written around February 11, 2010, for $63,262.92 from a Presidio Bank account ending in -2199 to an individual with initials P.K.  This check was funded primarily from the cashier's check purchased with check #3548 from North Coast Bank.

i.      By April 2010, the $318,903.94 held in trust by LSA for B.M.'s benefit had been spent.

j.      In furtherance of Steever's and Anderson's agreement and scheme to defraud B.M., Anderson engaged in a series of misrepresentations and deceptive communications with M.S., an attorney acting on B.M.'s behalf.  When M.S. inquired about the status of B.M.'s trust account in March 2012, Anderson sent the attorney an email intended to lead the attorney and B.M. to believe that the trust account still had about $252,511.55.  Put another way, the email was intended to obscure and omit the fact that no funds remained in the trust account, thereby lulling the attorney and B.M. to believe that the funds still existed and perpetuating Steever's and Anderson's scheme.

k.      Through at least June 2012, with Steever's knowledge and consent, Anderson continued to exchange communications with M.S. that obscured the existence of the trust funds and omitted the material fact that the funds had been spent in a manner that did not benefit B.M.  Neither Steever nor Anderson ever corrected M.S.'s belief that funds remained in a trust account until approximately June 2012.

l.      As a result of Steever and Anderson's scheme, B.M. suffered a net loss of about $210,189.16 from the $318,903.94 check that was deposited into the LSA client trust account.

m.      Steever agrees and understands that all checks that all checks written from North Coast Bank accounts are processed through Fidelity National Information Services ("Fidelity"), and that Fidelity's servers were located in Wisconsin and Arkansas at the time of Steever's offenses.

## II.    SENTENCING GUIDELINES CALCULATIONS

The written Plea Agreement and the Pre-Sentence Report in this case establish the following Sentencing Guidelines calculations.  Pursuant to USSG §2S1.1(a)(1), the Base Offense Level is 17. Pursuant to USSG §2S1.1(b)(2)(A), Steever receives a one-level increase because he was convicted under 18 U.S.C. § 1957.  Pursuant to USSG §3B1.3, Steever receives an additional two-level increase for abuse of A position of trust.  Steever receives a three-level decrease for Acceptance of Responsibility pursuant to USSG §3E1.1.  As a result of the above calculations, Steever's total offense level is 17.

Steever has no criminal convictions, resulting in a criminal history score of zero and a Criminal History Category I.  Given a total offense level of 17 and a criminal history category of I, the Guideline imprisonment range is 24 months to 30 months of imprisonment.  (PSR, ¶ 70.)

Under the sentencing guidelines and Section 3553(a), a sentence of 24 months of imprisonment is appropriate in this case.  The sentencing goals of deterrence, promoting respect for the law, reflecting the seriousness of the offense, and providing just punishment, are met with this proposed sentence.


## III.    STATUTORY SENTENCING FACTORS

### A.    The History and Characteristics of the Defendant Call for a 24-Month Sentence

Defendant's personal history and characteristics demonstrate the need for a sentence within the applicable Guideline range. Unlike many individuals who turn to criminal activities to support themselves, this defendant enjoyed a supportive upbringing by his parents in an environment free of poverty, abuse, or neglect.  The neighborhood in which the family lived was described as nice, and all of the defendant's material needs were met.  (PSR ¶ 50.)  Upon completing his high school education, he continued his education and ultimately earned a Juris Doctor degree and was admitted to the State Bar of California in December 1995.  (PSR, ¶ 61.)  His clients entrusted him with their money and their legal affairs, and he violated that trust and stole money from them.  Unlike many individuals in society, the defendant had the means earn a living in a law abiding way, but he instead chose to steal from others. He caused financial and emotional harm to his victims, and his conduct shows a troubling pattern of deception and supports a lengthy prison term.  (*See* PSR, ¶ 24.)

1    The defendant's background shows a history of theft and fraud beyond that at issue in the present

2    case.  The Indictment in this case only alleged a scheme to defraud a specific client, B.M., and did not

3    allege a broader scheme to defraud multiple clients.  Victims V.A. and J.R. suffered losses that were the

4    result of distinctly different conduct by Steever.

5    In 2010, Steever took V.A.'s money for personal use by falsely understating V.A.'s payout from a

6    settlement and pocketing the full amount by having the settlement check issued directly to himself.  In

7    2010, V.A., sought to file a civil lawsuit, and he hired Steever to represent him.  V.A. paid Steever a flat

8    fee of $5,000 for his legal services to handle the case.  A settlement conference was held in the matter.

9    V.A. attended the first part of the settlement conference, but during a break, Steever asked V.A. not to

10   attend further.  Steever explained that it would be easier to settle the matter between attorneys only,

11   without distractions.  V.A. agreed, and waited in the lobby for the duration of the conference.  When

12   Steever later emerged, he falsely informed V.A. that the matter had been settled for $10,000.  In fact, the

13   matter had settled for $28,500.  Steever deposited the $28,500 check soon after it was issued.  V.A.

14   expected to receive $10,000, and when he did not receive any settlement payment from Steever, he tried

15   to collect his money.  Steever made misrepresentations to V.A. for months regarding his settlement

16   proceeds.  V.A. later learned that the settlement was in fact for $28,000, and V.A. never received the

17   $28,500 that Steever took from him.

18   With J.R., from about July 2011 through about April 2012, Steever misrepresented to J.R. that

19   funds would be used for J.R.'s interests.  J.R. hired Steever to settle a lawsuit and financial debts for

20   $50,000 plus a flat fee of $5,500.  Steever entered into a written contract with J.R., and sent her a letter

21   instructing her to send him a check for $55,500.  J.R. hand-delivered the $55,000 check to Steever, did

22   not receive the agreed upon services, and did not receive a refund of her money.

23   With B.M., Steever and Anderson acted together to wrongfully use money B.M. entrusted to

24   their law firm.  In 2011, the defendants then engaged in misrepresentations to lead B.M. to believe the

25   firm still had her money.  Thus, Steever's conduct as to V.A. and J.R. was quite different and not part of

26   the same course of conduct as his theft from B.M.

27   Notwithstanding the presence of health issues, Steever committed the fraud in the instant case,

28   stole money from 2 other clients, abused the trust that his clients placed in him as a legal professional,

1   and took steps to hide his theft from his victims.  This conduct took place over a 3-year period, during

2   much of which Steever had the health issues.  He defrauded his victims while he had serious health

3   issues, and notwithstanding his current health issues, a custodial sentence is necessary to deter additional

4   criminal conduct, to reflect the seriousness of the crime, to promote respect for the law, to provide just

5   punishment for the offense, and to protect the public from further crimes of the defendant.

6

7   **B.     The Nature and Circumstances of the Present Offense Call for a 24-Month Sentence**

8   The nature and circumstances of the present offense demonstrate the need for a sentence within

9   the Guideline range, because this is a serious offense where the defendant stole over $210,000.  A

10   sentence below the Guideline range would not address the 3553 factors of deterrence, the need to reflect

11   the seriousness of the crime, to promote respect for the law, or to provide just punishment.  A sentence

12   below the Guidelines would also fail to avoid disparities in sentencing for theft of such a large amount

13   of money.

14   The amount of time that the defendant spent committing the instant offense, and committing

15   fraud against other clients of his, demonstrates the need for a sentence within the Guideline range.  For a

16   3-year period (2009-2012), Steever abused his position of trust as an attorney, and he stole money from

17   at least 3 clients.  A sentence below the Guidelines for an offense of such an extended duration would

18   not reflect the seriousness of the crime, would not promote respect for the law, and would not provide

19   just punishment.

20

21   **IV.     CONCLUSION**

22   For the foregoing reasons, the government respectfully requests that the Court, taking into

23   consideration the Sentencing Guidelines and the factors set forth in Section 3553(a), sentence Defendant

24   ///

25   ///

26   ///

27   ///

28   ///

UNITED STATES' SENTENCING MEMORANDUM
CR 14-00639 EMC                              6

1  Scott Steever, to 24 months of imprisonment, 3 years of supervised release, $210,189.16 in restitution to

2  victim B.M., $45,000 in restitution to victim J.R., $28,500 in restitution to victim V.A., and a $200

3  special assessment.

4

5  Dated:  June 21, 2017                                  Respectfully submitted,

6                                                         BRIAN J. STRETCH
                                                          United States Attorney
7
                                                                  /s/
8                                                         CHINHAYI COLEMAN CADET
                                                          Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28